IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ALEXIS WILKINS,

      *Plaintiff,*

v.

ELIJAH SCHAFFER,

      *Defendant.*

Case No. 9:25-cv-81334-DMM

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Jason C. Greaves
(Fla. Bar No. 1059179)
Jared J. Roberts
(Fla. Bar. No. 1036550)
Binnall Law Group
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Counsel for Plaintiff Alexis Wilkins*

Since the inception of this suit, Defendant has, rather theatrically, engaged in a media blitz of posts, videos, and podcast appearances to portray himself as an oppressed victim in fear for his safety. The fact of the matter is that his provocative business model is built around deliberately publishing inflammatory media content to churn engagement for his personal gain. His actions have consequences. In this case, he has gone too far and must be held accountable.

Defendant asks this Court to ignore the context in which he made his post about Alexis Wilkins, and then pretends he was merely joking about the obvious implication of that post. A reasonable listener did not hear Defendant making a joke. Instead, Defendant's post implied, as fact, that Ms. Wilkins—who is in a relationship with Kashyap Patel, the Director of the Federal Bureau of Investigation ("FBI")—is a Mossad agent currently acting as a "honeypot" to control and sabotage Dir. Patel. This was in the context of a post about actual honeypots infiltrating the Iranian government. Accordingly, Ms. Wilkins brought this case to protect her reputation and hold Defendant accountable for his malicious smear. Ms. Wilkins respectfully requests that this Court deny Defendant's motion to dismiss.

## BACKGROUND

Ms. Wilkins is a Christian American, born in the United States. Compl. at ¶ 7. She has been in a relationship with Kashyap "Kash" Patel since January 2023. *Id.* at ¶ 8. This was widely known, and Ms. Wilkins has posted photos of herself with Dir. Patel on Instagram as early as January 2024. *Id.* On November 30, 2024, newly re-elected President, Donald J. Trump, announced his intention to nominate Kash Patel as the next Director of the FBI. On February 20, 2025, the U.S. Senate confirmed Dir. Patel to that position. *Id.* Defendant is an internet personality and CEO of RiftTV who generates income from high-engagement content. *Id.* at ¶¶ 9, 10.

On September 14, 2025, X user, Hen Mazzig, published a lengthy and detailed post about the prominent role female Mossad agents have played in Israel's sophisticated

intelligence efforts against Iran, including by "seducing top officials" and that "[s]ome of them reportedly seduced high-ranking enemy officials." *Id.* at ¶ 11. In other words, Mazzig's post was about honeypots. In a responsive comment (or quote-post), published that same day, September 14, 2025, Defendant posted—without caption—a photograph of Ms. Wilkins, arm-in-arm with Kash Patel. *Id.* at ¶ 12. In doing so, Defendant's wordless reply to Mr. Mazzig's lengthy description of female Mossad agents who "seduced high-ranking enemy officials," juxtaposing a carefully chosen photograph of Ms. Wilkins in a sleeveless red dress, embracing the Director of the FBI, unmistakably spoke volumes. In so doing, Defendant accused Ms. Wilkins of being a Mossad agent engaged in espionage for Israel, who has "seduced" Dir. Patel to compromise him—a honeypot. *Id.* at 14. These accusations are categorically false. *Id.* This was, however, in line with Defendant's modus operandi of making scurrilous and arguably antisemitic posts about Israel supposedly controlling the United States and its politicians. *Id.* at ¶ 17. Accordingly, on October 28, 2025, Ms. Wilkins brought this case to protect her reputation and remedy the harm that Defendant caused her.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Importantly, a motion to dismiss does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. The threshold for surviving a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a "low one." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1183 (M.D. Fla. 2022) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983)).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Further, courts must construe the complaint liberally, accepting the pleaded facts as true and construing the facts in the light most favorable to the plaintiff. *Yachera v. Westminster Pharmaceuticals, Inc.*, 477 F. Supp. 3d 1251, 1262 (M.D. Fla. 2020) (citing *Quality Foods*, 711 F.2d at 994–95).

## ARGUMENT

### I.      Defendant's Exhibits Are Improper.

Defendant attached seven exhibits to his motion to dismiss, of which he requested the court to take judicial notice. The exhibits include social media posts and transcripts from Ms. Wilkins' appearances on podcasts. As an initial matter, Defendant's request is improper.

Under Federal Rule of Evidence 201, a district court may take judicial notice of facts that are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2)). Defendant's exhibits are not proper material for judicial notice. Defendant presented no argument that the accuracy of these exhibits could not be questioned, or that the facts were generally known within this Court's jurisdiction. "Therefore, judicial notice of these Exhibits is improper. For any Exhibit of which the Court does take judicial notice, however, it should be merely for its existence, and not for the truth of the contents within. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015) ("[C]ourts may take judicial notice of documents such as the newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements).").

Furthermore, none of these exhibits are incorporated by reference in the Complaint. The incorporation by reference doctrine applies if an extrinsic document is "essential to the plaintiff's claim, and if the authenticity of the extrinsic document is not disputed." *Lozman v. City of Riviera Beach*, No. 22-cv-80118-DMM, 2022 WL 19919679,

at *5 (S.D. Fla. Sept. 29, 2022). (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). "A document is not 'central' merely because it is directly responsive to a factual allegation." *Id.* (quoting *Adamson v. Porter*, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007)). Here, while the exhibits are perhaps relevant to background on the false narrative about Ms. Wilkins that had already been spread, or her denial of the same, they are not essential to proving her claim against Defendant. Instead, Ms. Wilkins' allegations are already sufficient and well pleaded.

## II.   Ms. Wilkins Sufficiently Pleaded Defamation by Implication.

A defamation by implication claim can arise in two instances: where a defendant (1) "juxtaposes a series of facts so as to imply a defamatory connection between them" or (2) "creates a defamatory implication by omitting facts . . . even though the particular facts are correct." *Jacoby v. Cable News Network, Inc.*, No. 21-12030, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008)). Defendants are protected if the implication qualifies as an opinion. *Id.* Here, as pleaded, Defendant juxtaposed a series of facts to imply a defamatory meaning and is not otherwise protected.

### a.   Defendant reasonably implied that Ms. Wilkins herself is a Mossad agent, manipulating and in control of Dir. Patel.

Defendant juxtaposed a photo of Ms. Wilkins—wearing a red cocktail dress and embracing the Director of the FBI—with a "true" discussion of how female Israeli Mossad agents had conducted honeypot operations, infiltrating a foreign government by "seducing" its top officials. Even without any other context, this is the definition of defamation by implication. Any reasonable reader could draw the inference that Defendant is calling Ms. Wilkins a honeypot and accusing her of infiltrating the U.S. government.

Defendant feebly attempts to obfuscate the meaning of the Mazzig thread by generalizing it as a mere "discussion of Mossad operations." *See* Dkt. No. 5 at 3, 4, 6. This

blatantly ignores the obvious context and the actual juxtaposition made by Defendant. It also ignores the carefully chosen photo of Ms. Wilkins in a red dress, when her social media has many more recent photos of her and Dir. Patel together, maximizing the visual implication of Ms. Wilkins "seducing" the Director of the FBI.

In *Coton v. Televised Visual X-Ography, Inc.*, the Middle District of Florida found that where the defendant used the plaintiff's picture, without permission, on the packaging of a pornographic movie, "improperly suggests the plaintiff's participation in, or her willing association with, the pornographic industry, [and] constitutes defamation by implication." 740 F. Supp. 2d 1299, 1314 (M.D. Fla. 2010) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008)). Similarly, here, Defendant took Ms. Wilkins' photograph and posted it in response to a "true discussion" about female Mossad agents seducing and sabotaging top officials, which improperly, and quite obviously, suggests that Ms. Wilkins herself is a Mossad agent committing espionage and treason by working to seduce and sabotage Dir. Patel. As in *Coton*, this suggestion is defamation by implication.

Even assuming Defendant was correct that there are other possible interpretations of his post, it remains a fact that Defendant's post is also far more than reasonably capable of a defamatory meaning. As the Supreme Court of Florida noted:

> A communication to be defamatory need not tend to prejudice the other in the eyes of everyone in the community or of all of his associates, nor even in the eyes of a majority of them. *It is enough that the communication would tend to prejudice him in the eyes of a substantial and respectable minority of them, and that it is made to one or more of them or in a manner that makes it proper to assume that it will reach them.*

*Jews for Jesus*, 997 So. 2d at 1114 (quoting Restatement (Second) of Torts § 559 cmt. e) (emphasis in original). As the Fourth District Court of Appeal recently reiterated, a complaint should only be dismissed if "a communication could not possibly have a defamatory or harmful effect." *Doe v. Finkelman*, --- So.3d ---, No. 4D2024-1978, 2025 WL 3466498, at \*7 (Fla. 4th DCA, Dec. 3, 2025) (quoting *Wolfson v. Kirk*, 273 So.2d 774,

778 (4th DCA 1973)) (emphasis added). "Where, however, a communication is ambiguous and is reasonably susceptible of a meaning which is defamatory, it is for the trier of fact to decide whether or not the communication was understood in the defamatory sense." *Id.* (quoting *Wolfson*, 273 So. 2d at 778–79); see also *Greene v. Times Pub. Co.*, 130 So. 3d 724, 730 (Fla. 3d DCA 2014) (quoting *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305 (11th Cir. 2001)). Accordingly, even assuming a scenario in which some would agree with Defendant's interpretation, it is enough that, at a minimum, a "substantial and respectable minority" of persons would agree with Ms. Wilkins' interpretation, which will be proven at trial. Ultimately, this is a question for the jury.

Notably, Defendant proposes only two alternative interpretations, each fanciful and requiring the reader to ignore the content of the Mazzig thread. *See* Dkt. No. 5 at 8–9. The idea that a captionless photograph of Dir. Patel with Ms. Wilkins, in response to an article about Mossad honeypots, is merely a "commentary on the broader security risks" of an unmarried FBI director, or a "criticism of Director Patel's judgment," without the added meaning that Ms. Wilkins is a honeypot, requires unreasonable leaps of logic. *See id.* By contrast, the interpretation alleged by Ms. Wilkins is the simplest and most obvious.

Defendant cites *Readon v. WPLG, LLC*, for the argument that Ms. Wilkins' interpretation is a stretch; however, *Readon* is readily distinguishable. Dkt. No. 5 at 7–8. In *Readon*, a news organization reported on the plaintiff's alleged dishonest business dealings and also reported that he was a pastor. 317 So. 3d 1229, 1233–34 (Fla. 3d DCA 2021). The plaintiff sued for defamation by implication on the theory that the defendant implied that he committed the conduct during his business dealings in his role as a pastor. *Id.* at 1237. The court found that the defendant's reporting on the plaintiff's conduct during his business dealings were not an implication, but rather, were explicitly stated. *Id.* Mentioning that the plaintiff was a pastor did not make the reporting "any more or less negative, but rather gave the public a context for why the stories were relevant." *Id.*

at 1237–38. In contrast, here, Ms. Wilkins' photograph and Mr. Mazzig's post do not, standing alone, create a defamatory implication. Defendant's combination of the two, however, did inherently create the negative implication that Ms. Wilkins is a Mossad agent committing espionage and treason by working to sabotage Dir. Patel. To interpret it any other way would render the post nonsensical.

Lastly, Defendant attempts to heighten Ms. Wilkins' burden, claiming she must make "an especially rigorous showing" of the defamatory implication and that Defendant intended or endorsed the inference. Dkt. No. 5 at 6–8. In doing so, Defendant cannot, and does not, cite to any Florida caselaw for the proposition that Ms. Wilkins must make a rigorous showing of the implication. Defendant also cannot, and does not, cite any caselaw for the proposition that Ms. Wilkins must rigorously or otherwise show that Defendant intended or endorsed the implication. Undersigned counsel is unaware of any such Florida caselaw. Instead, in Florida, defamation by implication merely requires Ms. Wilkins to plead a juxtaposition of facts so as to reasonably imply a defamatory implication. *See Jews for Jesus*, 997 So. 2d at 1108.

Regardless, Plaintiff's Complaint does make a "rigorous" showing of the defamatory implication, as illustrated above. And even if Ms. Wilkins were required to plead that Defendant intended or endorsed the implication, the Complaint does so. Defendant could have posted Ms. Wilkins' photograph anywhere, including as a standalone post, not directly in response to the Mazzig thread. That is not what Defendant did. True to his provocative business strategy to achieve viewership engagement, Defendant intentionally embraced his defamatory acts and chose to post the photograph of Ms. Wilkins, in a sleeveless, red, cocktail dress, in direct response to a post about female Mossad agents. Notably, this is not an isolated instance. Defendant regularly posts about Israel supposedly controlling the United States. Compl. at ¶ 17. Defendant has also referred to Dir. Patel as a "traitor." *Id.* at ¶ 18. By posting the photograph of Ms. Wilkins and the Director of the FBI in response to a post about Mossad agents, Defendant was

deliberately attempting to drive home his inflammatory narrative that Israel is, in fact, controlling top officials in our federal government, *i.e.*, Ms. Wilkins, an Israeli agent, is controlling the Director of the FBI. Id. at ¶ 25. At this stage in the litigation, Ms. Wilkins has more than satisfied her burden.

> **b.    Defendant's implication is false.**

Defendant next argues that if Ms. Wilkins' interpretation is accepted, then that implication must be viewed as rhetorical hyperbole. Dkt. No. 5 at 9–10. This is not so. The unequivocal implication of Defendant's post is that Ms. Wilkins is an example of a female Mossad agent who infiltrated and is sabotaging government officials, thereby committing espionage and treason. The average viewer would, and did, view this as an assertion of fact, as intended.

The dispositive question for this analysis is "whether a reasonable factfinder could conclude the challenged statements imply an assertion that 'is sufficiently factual to be susceptible of being proved true or false.'" *Bennett v. Hendrix*, 325 Fed. Appx. 727, 739 (11th Cir. 2009) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)). In determining whether a statement is opinion or rhetorical hyperbole, context is critical. *Dibble v. Avrich*, No. 14-cv-61264, 2014 WL 5305468, at *3 (S.D. Fla. Oct. 15, 2024) (quoting *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)). At the motion to dismiss stage, courts have been unwilling to dismiss the action unless the defamatory statement is "incapable of being interpreted as false facts." *See id*. at *4. Here, the implication of Defendant's post can readily be interpreted as a fact that is provably false.

This case is like *Bennett v. Hendrix. Bennett* involved a political election for sheriff between the defendant and a third party, Ted Paxton, to whom the plaintiff donated money and supported. *Bennett*, 325 Fed. Appx. at 729. During the campaign, the defendant distributed fliers featuring the plaintiff's mugshot, accompanied by the text, "Should a Candidate for Sheriff finance his campaign using cash from convicted

criminals?" *Id.* at 740. While the plaintiff was previously arrested, he was not convicted. *Id.* Still, the district court dismissed the plaintiff's defamation claim, finding the speech constituted rhetorical hyperbole. *Id.* The Eleventh Circuit, however, reversed the district court because whether the plaintiff was a convicted criminal is verifiable. *Id.* The court further reached this conclusion based on context. *Id.* at 741. The defendant presented the question of whether a candidate for office should accept funds from a convicted criminal in tandem with a picture of the plaintiff. *Id.* Therefore, a reasonable reader could conclude that the plaintiff was, in fact, convicted of a criminal offense. *Id.* In sum, "[f]alse factual assertions are not protected under the First Amendment, even if expressed within the context of political debate." *Id.; see also Dibble*, 2014 WL 5305468, at *4 (the defendant claimed his online postings stating that the plaintiff "might not be a real person, is a cheapskate, a 'non-customer,' and lacks any credibility" was mere rhetorical name-calling, however, the court denied the defendant's motion because, as a matter of law, the court could not find "that Defendant's insults are incapable of being interpreted as false facts.").

Likewise, here, Defendant took text about female Mossad agents infiltrating and sabotaging government officials and posted a picture of Ms. Wilkins with Dir. Patel. In this context, a reasonable reader could easily conclude that Defendant was stating as a matter of fact that Ms. Wilkins is, herself, a Mossad agent infiltrating the federal government by manipulating Dir. Patel. This is especially true in the context of the false narrative that had already been spread by others on the internet that Ms. Wilkins is an Israeli Mossad agent, spy, or "honeypot," who is only in a relationship with Dir. Patel to spy on and manipulate the United States government. Compl. at ¶ 14. There is also Defendant's own narrative that Israel is actively infiltrating our government. *Id.* at ¶ 17. Therefore, a reasonable viewer could readily determine that Defendant was not only feeding, but also lending credence to, that false narrative. At a minimum, there are two competing reasonable interpretations, making this an issue for a jury. *See Belli v. Orlando*

*Daily Newspapers, Inc.*, 389 F.2d 579, 584 (5th Cir. 1967) ("The defendants make a case—just barely—for the view that the article is capable of being reasonably interpreted as non-defamatory. But since the article on its face is also capable of carrying a defamatory meaning, it is for the jury to decide whether the words were in fact so understood."). As the Eleventh Circuit instructs, even in the political context, Defendant's false accusations are not protected.

Defendant attempts to excuse his own outrageous accusation by noting Ms. Wilkins has called them "ludicrous" and "laughable." The fact that Ms. Wilkins denies this, in no uncertain terms, has attempted at every opportunity to deflect and defuse the false claim that she is a Mossad spy, and has sued multiple individuals for spreading it, does not immunize Defendant from continuing to spread this malicious lie. Ms. Wilkins' repeated attempts to mitigate the damages against her reputation are not evidence that Defendant's lies are rhetorical hyperbole. Quite the opposite. They show that Ms. Wilkins has been forced to defend her reputation against a pernicious lie that continues to propagate, thanks to people who fan the flames like the Defendant.

Defendant chiefly relies on *Horsley v. Rivera*; however, this case does not apply. In *Horsley*, the plaintiff operated anti-abortion websites and would post personal information about doctors who performed abortions. *Horsley v. Rivera*, 292 F.3d 695, 697 (11th Cir. 2002). After one doctor was murdered, the plaintiff added the doctor to one of the websites. *Id.* A few days later, the plaintiff voluntarily appeared on the defendant's talk show. *Id.* at 698. During a heated and emotional debate, the defendant called the plaintiff an accomplice to murder. *Id.* at 701–02. The court agreed that, based on context, this statement was rhetorical hyperbole, in that no reasonable person would actually believe the defendant was accusing the plaintiff of a felony. *Id.* Both parties were involved in an emotional debate, both using figurative language. *Id.* And when the defendant accused the plaintiff of being an accomplice to murder, it was clear the plaintiff did not even take it literally, as he fired back saying, "You are too." *Id.* Accordingly, this debate-

like context, with both sides engaging in figurative insults, is why the court deemed the defendant's statement to be rhetorical hyperbole. *Id.* Here, to the contrary, there was no such debate, with each side using figurative language. Instead, a reasonable viewer would see Defendant posting Ms. Wilkins' picture in response to a post about Mossad agents infiltrating government officials, without anything more, to mean that Defendant is asserting that Ms. Wilkins is an example of such conduct.

Defendant's additional cases are likewise unpersuasive. For example, in *Greenbelt Co-op. Pub. Ass'n v. Bresler*, the plaintiff wanted the city to rezone one of the properties he owned, and used this as leverage in negotiations for a different piece of property he owned that the city wanted to buy to turn into a school. 398 U.S. 6, 7 (1970). During the course of heated city council meetings, community members said that the plaintiff was committing "blackmail," and the defendant reported those quotes. *Id.* The defendant did not change any context to make it appear as if the plaintiff had actually committed blackmail, and, given the debate setting, nobody actually viewed the plaintiff as having committed the crime of blackmail. *Id.* at 13–14. Again, here, the context of Defendant's post is entirely different from the context in Greenbelt, where there was a heated debate with insults being hurled, and the Greenbelt defendant simply reported on that fact.

Accordingly, this issue is not properly determined at this stage in the proceedings, and the Court should deny Defendant's motion.

### c. Defendant acted with a sufficient degree of fault.

#### 1. *Ms. Wilkins is not a public figure.*

Defendant argues that Ms. Wilkins is, minimally, a limited-purpose public figure. At the motion to dismiss stage, however, this cannot be readily determined. Therefore, it is premature to conclude that Ms. Wilkins needs to prove actual malice.

"[D]efining a public figure has been likened to trying to nail a jellyfish to the wall." *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433 (5th Cir. 1987). "A limited purpose public figure is an individual [who] voluntarily injects himself or is drawn into a

particular public controversy and thereby becomes a public figure for a limited range of issues." *Grlpwr, LLC v. Rodriguez*, No. 3:23-cv-16480, 2023 WL 5666203, at *5 (N.D. Fla. Aug. 25, 2023) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (alterations in original).). Furthermore, "the alleged defamation was germane to the individual's role in the controversy." *Id.* (quoting *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018)). In Rodriguez, because the plaintiff was not part of a public controversy, she was not a limited-purpose public figure. *Id.*

In this case, Defendant describes the public controversy as Dir. Patel's leadership and independence, as well as foreign influence on government officials. Dkt. No. 5 at 10–11. The mere fact that Ms. Wilkins is associated with Dir. Patel, however, cannot plausibly transform her into a public figure. While events surrounding Dir. Patel are undoubtedly issues of public concern, those issues do not involve Ms. Wilkins in anything but a tangential fashion. Ms. Wilkins is neither a member of the FBI, nor has she attempted to influence any public controversy regarding the FBI. Thus, she cannot be a limited-purpose public figure on this topic.

While there has been coverage of Ms. Wilkins' relationship with Dir. Patel, "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979). If that were the case, every person who happens to be in a relationship with a public official would inherently become a public figure, an absurd result. *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979). And that Ms. Wilkins publicly defended her reputation does not show that she was germane to any dispute about independence of and foreign influence on public officials. Accordingly, Ms. Wilkins is only required to show that Defendant acted negligently.

### 2.      *Defendant acted negligently.*

As a private individual, the requisite degree of fault in this case is negligence. This requires a showing that the defendant acted "without reasonable care as to whether such statements were true or false." *Miami Herald Pub. Co. v. Ane*, 423 So.2d 376, 389 (Fla. 3d DCA 1982). The test essentially asks whether the defendant should have known better. Id. at 390.

Here, at the very least, Defendant acted negligently when he claimed that Ms. Wilkins is a honeypot spy. Notably, at no point in Defendant's motion does he argue that he was not negligent. Instead, Defendant solely focuses on actual malice. As pleaded, Ms. Wilkins had been in a relationship with Dir. Patel for over a year prior to him becoming Director of the FBI, and before President Trump was even re-elected, which was widely known. Compl. at ¶ 8. Ms. Wilkins could not have begun a relationship with Dir. Patel to influence him in a position of power if Dir. Patel was not even in a position of power. Furthermore, at no point did Defendant reach out to Ms. Wilkins despite her public denial of her affiliation with Israel. *Id.* at 27. There is simply no basis to imply, nor indication anywhere, that Ms. Wilkins is an agent of Israel. That Ms. Wilkins is connected to The Daily Wire and PragerU provides no basis that she is an Israeli agent. In sum, Defendant should have known, and did know, that his implication about Ms. Wilkins was false, yet he published his false implication without seeking any corroboration. Accordingly, Ms. Wilkins has sufficiently pleaded Defendant's negligence.

### 3.      *Regardless, Defendant acted with actual malice.*

Even if Ms. Wilkins were a public figure in some relevant capacity, Defendant's motion still fails because Ms. Wilkins plausibly alleges that Defendant acted with actual malice. Actual malice is defined as "knowledge that it was false or with reckless disregard of whether it was false or not." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). A plaintiff is entitled to prove a defendant's state of mind through circumstantial

evidence, which is often the only way to prove malice in libel cases. *Id.* at 668, 681–82, 683–84. Actual malice exists based on the "sum total of the inferences of actual malice" that may be properly drawn. *Hunt v. Liberty Lobby*, 720 F.2d 631, 645–46 (11th Cir. 1983). Although "a showing of ill will, alone, cannot establish actual malice . . . ill will or motive, when combined with other evidence, may amount to actual malice." *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 44 (Fla. 4th DCA 2010) (citing *Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668, (1989)). Here, the Complaint "alleges facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (internal quotation marks omitted).

Ms. Wilkins properly showed in her Complaint that Defendant knew his implication about her was false or, at the very least, acted recklessly in making the implication. Dkt. No. 1 at ¶ 32. As an initial matter, Defendant entirely fabricated that Ms. Wilkins is a Mossad spy who infiltrated the United States federal government via Dir. Patel and has been sabotaging him on behalf of a foreign government. As the Supreme Court has noted, "[p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

Here, there was simply no basis to assert that Ms. Wilkins is a honeypot or a apy. Instead, Defendant fabricated it entirely. It was widely known that Ms. Wilkins and Dir. Patel were in a relationship before Patel became Director of the FBI; before President Trump was even re-elected. Compl. at ¶ 8. Again, Ms. Wilkins could not have begun a relationship with Dir. Patel to influence him in a position of power if Dir. Patel was not even in a position of power. And as Defendant asks the Court to notice, Ms. Wilkins very publicly stated prior to Defendant's statements that the allegations regarding her

affiliation with Israel are false. *Id.* at ¶ 27. Minimally, Defendant acted with reckless disregard for the truth.

If Defendant claims he relied on postings from others about Ms. Wilkins being a Mossad agent, there is simply no record evidence that Defendant relied on any credible sources when fabricating his lies. Defendant cannot retroactively cobble together a baseless claim of such reliance at this stage. *See Trump Media & Tech. Grp. Corp. v. WP Co.*, Case No. 8:23-cv-1535-TPB-AAS, 2025 WL 1615443, at \*3 (M.D. Fla. Jun. 6, 2025) (holding on motion to dismiss that the defendant could not rely on a source that it did not attribute its statement to in the subject publication).

Even if the Court were to consider outside sources, the only persons who were making these assertions and questioning Ms. Wilkins' allegiance, were internet trolls whose reliability is inherently and highly, questionable. In *Hunt*, the defendant relied on a source that was directly at odds with the plaintiff. 720 F.2d at 645. There were "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* (quoting *St. Amant*, 390 U.S. at 732). Thus, it remained a question for the jury as to whether the defendant satisfactorily followed up on the doubts they had about the source. *Id.* This was coupled with the fact that the news story was not "hot." *Id.* "When a story is not 'hot news,' 'actual malice may be inferred when the investigation . . . was grossly inadequate in the circumstances.'" *Id.* (quoting *Vandenburg v. Newsweek Inc.*, 441 F.2d 378, 380 (5th Cir. 1971)). A defendant cannot "feign ignorance" in such situations. *Hunt*, 720 F.2d at 644 (quoting *Gertz v Robert Welch, Inc.*, 680 F.2d 527, 538 (7th Cir. 1982)).

Like *Hunt*, Defendant's sources are directly at odds with Ms. Wilkins for largely the same reasons. Also, like *Hunt*, the news story here was not "hot" news. Still, Defendant relied on his dubious sources without conducting any sort of investigation, despite having time to do so. Simply put, Defendant not only avoided, but willfully disregarded, the truth. And while "failure to investigate will not alone support a finding of actual malice," "purposeful avoidance of the truth is in a different category." *Harte-Hanks*, 491 U.S. at

692 (citing *St. Amant*, 390 U.S. at 731–33). When coupled with Ms. Wilkins' public denial of the allegations, along with the fact that Ms. Wilkins began dating Dir. Patel long before he became Director of the FBI, any person in such a scenario would have harbored doubts. As a byproduct of his intent to harm Ms. Wilkins and his disdain for Dir. Patel, Defendant willfully disregarded the truth.

Furthermore, that Defendant's accusation is "inherently ludicrous," yet he still put the accusation into circulation, is evidence of his actual malice. A defendant will be unlikely to prevail if their "allegations are so inherently improbable that only a reckless man would have put them in circulation." *St. Amant*, 390 U.S. at 732. It is inherently improbable that Ms. Wilkins would be a Mossad agent working to seduce and control Dir. Patel. Yet this is exactly what Defendant implied. Only someone who is reckless would do so, evidencing Defendant's actual malice.

Lastly, additional circumstantial evidence likewise illustrates Defendant's actual malice. First, Defendant had motive to lie about Ms. Wilkins for self-promotion, to churn media engagement with his viewers, and profit from such a business plan. Compl. at ¶¶ 10, 26. Second, Defendant has obvious disdain for Dir. Patel, even referring to him as a "traitor." *Id.* at ¶¶ 18, 26. Third, Defendant wanted to promote his own narrative about Israel controlling our government and used Ms. Wilkins as his prime example. *Id.* at ¶ 17.

While Ms. Wilkins acknowledges that evidence such as ill will alone does not amount to actual malice, Ms. Wilkins does not ask the Court to view each factor alone, but rather, as a whole. Instead, "ill will or motive, when combined with other evidence, may amount to actual malice." *Don King Prods.*, 40 So. 3d at 44 (citing *Harte–Hanks*, 491 U.S. at 668; *Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 411 (6th Cir.1991)). The combination of Ms. Wilkins' allegations is sufficient to "raise a 'reasonable expectation that discovery will reveal evidence' of actual malice." *Nunes v. Lizza*, 12 F.4th 890, 901 (8th Cir. 2021) (quoting *Twombly*, 550 U.S. at 556). *See also Hunt*, 720 F.2d at 646 (holding that the

"sum total of the inferences" support a finding of actual malice). Accordingly, considering the combination of this evidence, Ms. Wilkins has met her burden at the pleading stage.

Defendant primarily relies on *Reed v. Chamblee* for his argument that he did not act with actual malice. Dkt. No. 5 at 12. In *Reed*, the plaintiff made conclusory allegations that the defendants acted with actual malice. No. 24-10058, 2025 WL 1874638, at *3 (11th Cir. 2025). The only supporting arguments that plaintiff provided were that the defendants had ill will and did not conduct an investigation. *Id.* Ultimately, these allegations, on their own, were insufficient. *Id.* There was no showing that the defendants "deliberately avoided investigating the veracity of the statement." *Id.* Unlike Mr. Reed, however, Ms. Wilkins does not simply rely on conclusory allegations of ill will or lack of investigation. Instead, the Complaint includes multiple facts to show that Defendant fabricated the accusation, his reason to know of her prior denials, the inherent unreliability of any of Defendant's purported sources, the ludicrous and outrageous nature of the accusation, and the consequent recklessness of placing it into circulation. The Complaint demonstrates that in the face of all this, Defendant deliberately avoided the truth and cannot now "feign ignorance." *See Hunt*, 720 F.2d at 644.

Defendant also relies on *Michel v. NYP Holdings, Inc.*, which is likewise unpersuasive. In *Michel*, the plaintiff argued that the defendant had a duty to investigate but failed to do so. *Michel*, 816 F.3d at 704. In that case, however, the defamatory article itself illustrated that the defendants did conduct some investigation, and the plaintiff did not otherwise show why this investigation was insufficient. *Id.* Furthermore, the plaintiff's argument was belied by the fact that "the defendants included information contrary to their conclusions in the text of the article itself." *Id.* at 705. Here, unlike in *Michel*, Defendant did not conduct *any* investigation before issuing his reckless post, nor did he include any contrary information. Accordingly, unlike in *Reed* or *Michel*, Ms. Wilkins' allegations satisfy her burden under the *Twombly*/*Iqbal* standards.

### III.    Florida's Anti-SLAPP Statute Does Not Apply.

While Defendant seemingly claims it is a foregone conclusion that Florida's Anti-SLAPP statute applies to diversity cases in federal court, this is not so. The Eleventh Circuit has yet to directly rule on whether Florida's anti-SLAPP applies in federal court. *Condo. Assoc. of Parker Plaza Ests., Inc. v. Moreff*, No. 22-cv-61638, 2023 WL 3600495, at \*1 (S.D. Fla. March 2, 2023). Nevertheless, it did consider the applicability of Georgia's anti-SLAPP statute, which is instructive. *See Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018).

Relying on *Shady Grove*, the Eleventh Circuit held, "[a] federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure 'answers the question in dispute.'" *Id.* at 1349 (quoting *Shady Grove*, 559 U.S. at 398). Only if no Federal Rule "answers the question in dispute, [courts] undertake an 'unguided Erie' inquiry to decide whether to apply the state statute or federal common law." *Id.* (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). The question then addressed was "whether Carbone's complaint states a claim for relief supported by sufficient evidence to avoid pretrial dismissal." *Id.* at 1350. As the Eleventh Circuit found, "Rules 8, 12, and 56 provide an answer." *Id.* Given the breadth of Rules 8, 12, and 56, "[t]hose Rules are 'sufficiently broad' . . . to 'control the issue' before the court, thereby leaving no room for the operation'" of Georgia's anti-SLAPP law's procedure. *Id.* at 1352 (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)). The Federal Rules are not to be construed narrowly. *Id.* (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980)).

Florida's anti-SLAPP statute answers the same question as Rules 8, 12, and 56 regarding pretrial dismissal. Not only that, but it answers the question differently, adding procedural burdens not present in the Federal Rules of Civil Procedure.

According to the Florida Second District Court of Appeals, "the [Florida] Anti-SLAPP statute requires the trial court to do more than accept as true the factual

allegations in the four corners of the complaint and draw all reasonable inferences therefrom in favor of the claimant." *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019). Instead, Florida's Anti-SLAPP statute contains a burden-shifting framework. *Id.* This requires a defendant to first "set forth a prima facie case that the Anti-SLAPP statute applies," and then the burden shifts to the plaintiff to demonstrate the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit' serves the purpose of the statute." *Gundel*, 264 So. 3d at 314. Such a standard is incompatible with the Federal Rules, attempts to add an additional procedural burden, and answers the same question as the Federal Rules regarding pretrial dismissal. Florida's anti-SLAPP statute also requires a heightened pleading standard in that it requires plaintiffs to show the statute was not filed primarily because such person or entity has exercised the constitutional right of free speech." Fla. Stat. § 768.295(3).

All of this was highlighted in Chief Judge William H. Pryor's recent expressions of doubt as to whether Florida's Anti-SLAPP statute applies in federal court. At oral argument in *Corsi v. Newsmax Media, Inc.*, Chief Judge Pryor stated:

> There's a conflict in what the - the Florida courts even say this – in how the statute works, right? . . . On the one hand, at least one DCA has said it does create a heightened pleading standard, right? . . . The other says it doesn't. . . . If it does, it seems to me, then it conflicts with the federal rules and it doesn't apply. . . . And if it doesn't create a heightened pleading standard, then it seems to me it's procedural and it also doesn't apply. . . . But either way, it seems to me the statute just doesn't apply in federal court.

Exhibit 1 at 14. He continued:

> The thing I'm most interested [in] . . . is the attorney's fees issue, and I have serious doubts about whether the anti-SLAPP statute applies in federal court. And it seems to me that if it doesn't, then a suit filed in violation of it can't give rise to an attorney's fee award.

Id. at 18.

In short, Florida's anti-SLAPP statute seeks to establish the procedures for pretrial dismissal, answering the same question as Federal Rules 8, 12, and 56. And in many

respects, Florida's anti-SLAPP statute creates a different, and conflicting, procedure. Additionally, Rules 8, 12, and 56 do not violate the Rules Enabling Act. *See Carbone*, 910 F.3d at 1356. Federal Rule 11 also answers the same question in determining whether a suit was filed for an improper purpose. Therefore, under *Erie*, Florida's anti-SLAPP statute is inapplicable in federal court because it is procedural and not substantive

Regardless, even if Florida's anti-SLAPP statute applied in federal court, it does not apply to this case. Florida's anti-SLAPP statute only applies if: (1) the case is "without merit"; (2) the case was brought "primarily because such person or entity has exercised the constitutional right of free speech"; and (3) the case involves "a public issue." Fla. Stat. § 768.295(3). First, as illustrated above, Ms. Wilkins' case is not without merit. Instead, Ms. Wilkins has a colorable claim for recovery. Second, there is simply no evidence that Ms. Wilkins brought this case *primarily* because Defendant exercised his First Amendment rights. Instead, as pleaded, Ms. Wilkins brought this case because of the harm she has suffered. Compl. at ¶ 29. And third, Ms. Wilkins' relationship with Dir. Patel is not a public issue, notwithstanding Defendant's, and other internet trolls', attempts to make it a public issue. Accordingly, under any scenario, Defendant is not entitled to fees.

## CONCLUSION

While defamation law has evolved over time, "the basic theory of libel has not changed." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 151–52 (1967). "[W]ords defamatory of another are still placed in the same class with the use of explosives or the keeping of dangerous animals." *Id.* (quoting PROSSER ON THE LAW OF TORTS s 108, at 792) (internal quotation omitted). Accordingly, while Defendant is entitled to critique anyone, including Ms. Wilkins, he is not entitled to lie about her in an obvious attempt to churn media engagement for his personal benefit. Viewing the facts in the Complaint as true and in the light most favorable to Ms. Wilkins, Defendant's motion should be denied. In the alternative, if this Court were to believe that any aspects of Ms. Wilkins' claims are lacking, Ms. Wilkins would request leave to amend her Complaint to more fully articulate them.

Dated: January 20, 2026                    Respectfully submitted,

                                           */s/ Jason C. Greaves*
                                           Jason C. Greaves
                                           (Fla. Bar No. 1059179)
                                           Jared J. Roberts
                                           (Fla. Bar. No. 1036550)
                                           BINNALL LAW GROUP
                                           717 King Street, Suite 200
                                           Alexandria, Virginia 22314
                                           Phone: (703) 888-1943
                                           Fax: (703) 888-1930
                                           jason@binnall.com
                                           jared@binnall.com

                                           *Counsel for Plaintiff Alexis Wilkins*

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jason C. Greaves*
Jason C. Greaves
(Fla. Bar No. 1059179)

*Counsel for Plaintiff Alexis Wilkins*