UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:25-cv-81334-DMM
HON. DONALD M. MIDDLEBROOKS

ALEXIS WARNER,

    Plaintiff(s),

vs.

ELIJAH SCHAFFER,

    Defendant(s).

_____/

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS WITH PREJUDICE**

Defendant Elijah D. Schaffer ("Defendant" or "Mr. Schaffer") files this Reply in support of his Motion to Dismiss ("Motion") and states as follows:

### I. INTRODUCTION

Plaintiff's Opposition only underscores why this case should be dismissed. Her claim turns a caption-less repost of a concededly true photograph made in the midst of an online debate about foreign influence into a literal accusation of espionage she herself calls "inherently ludicrous."

Defamation law and the First Amendment do not support her claim, especially when factoring in that Plaintiff is at least a limited-purpose public figure and pleads no facts showing actual malice. Because the Complaint does not plausibly allege a defamatory meaning, falsity, or actual malice, and because Mr. Schaffer's statement is shielded by the First Amendment, Plaintiff's claim must be dismissed with prejudice and fees should be awarded to Defendant under Florida's anti-SLAPP statute.

### II. ARGUMENT

**A. Plaintiff's Complaint Rests on an Unreasonable Reading of Defendant's Post.**

    **i. Plaintiff misstates Defendant's argument and applicable law.**

Plaintiff accuses Defendant of heightening her burden by citing cases that require an "especially rigorous showing" for defamation by implication and by suggesting that she must show

Defendant "intended or endorsed" the inference. (DE 7 at 7–8). Plaintiff mischaracterizes both Defendant's argument and the law.

First, Defendant has not argued that Florida imposes some special, extra element unique to defamation by implication. To the contrary, Defendant's Motion explicitly points to Florida case law stating that defamation by implication is "subsumed within the tort of defamation" and that "all of the protections of defamation law" apply with full force. (DE 5 at 7); *see Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008).

Consistent with those protections, federal courts have repeatedly recognized that, where the underlying facts reported are literally true, defamation by implication claims raise special First Amendment concerns and therefore demand a careful, sometimes "especially rigorous," analysis of whether the publication can reasonably be read to convey the alleged false innuendo and whether the speaker may fairly be said to have adopted that innuendo. *See Biro v. Condé Nast*, 883 F. Supp. 2d 441, 464-465 (S.D.N.Y. 2012); *Chapin v. Knight-Ridder*, 993 F.2d 1087, 1093 (4th Cir. 1993); *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990).

Florida courts apply the same caution. In *Readon v. WPLG, LLC*, the Third District Court of Appeals emphasized that the First Amendment requires defamation law to carve out "breathing space" so that protected speech is not discouraged, warning that overbroad liability would have a "substantial chilling effect" on protected reporting. 317 So. 3d 1229, 1236–37 (Fla. 3d DCA 2021). Defendant's reference to an "especially rigorous showing" simply reflects how courts implement those constitutional safeguards in defamation by implication cases, rather than inventing a new element.

Second, even under Plaintiff's own interpretation (that she need only plead "a juxtaposition of facts so as to reasonably imply a defamatory implication"), her claim still fails. Defamation law still requires that any alleged implication be one an ordinary reader would draw from the publication as a whole; it does not impose liability based on strained readings adopted only by a subset of viewers. *See Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020); *see Biro*, 883 F. Supp. 2d at 464.

Here, as explained below, a caption-less repost of a true photograph of Plaintiff and Director Patel, in response to an ongoing thread about foreign influence, is not reasonably read as a literal assertion that Plaintiff is an active Mossad agent committing espionage and treason, particularly where Plaintiff herself describes that implication as "inherently ludicrous." Compl. ¶ 27.

Further, even accepting all well-pleaded facts as true, Plaintiff has not plausibly alleged that Mr. Schaffer's wordless repost of her own photograph "affirmatively suggests" that he is asserting, as fact, that she is a Mossad operative, as opposed to engaging in the kind of exaggerated, sarcastic political commentary that the First Amendment protects. At most, the Complaint alleges that others in "conspiratorial corners of the internet" had already used similar imagery to spin that narrative, and that some viewers of Mr. Schaffer's post may have done so again. That is not enough under Florida law to show defamation by implication and survive Defendant's Motion.

  ii. **Florida courts act as gatekeepers on whether a publication is reasonably capable of a defamatory meaning.**

Plaintiff leans heavily on the proposition that, if a communication is "ambiguous and reasonably susceptible of a meaning which is defamatory," the question is for the jury. (DE 7 at 6). But she downplays the threshold rule: whether a statement is reasonably capable of the alleged defamatory meaning is first a question of law for the Court. *See Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018) (explaining that, under Florida law, whether a statement is reasonably capable of a defamatory meaning is a question of law for the court).

As this Court and others have recognized, defamation claims are frequently dismissed at the motion to dismiss stage, and the court's gatekeeping function is "especially appropriate" in defamation cases because of the chilling effect on speech. *See Marder v. TEGNA Inc.*, 2020 WL 3496447, at *3 (S.D. Fla. June 29, 2020) ("[C]ourts routinely dismiss defamation claims at the motion to dismiss stage."); *see also Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (affirming dismissal of defamation claims by trial court at motion to dismiss stage); *see also Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985) (affirming trial court dismissal of defamation claims and stating "trial courts, upon motions to dismiss, routinely make decisions as to whether a privilege applies to protect an allegedly defamatory statement.").

The Court therefore does not ask whether any subset of viewers could, through a strained reading and a series of speculative leaps, spin a defamatory narrative from the post. *See Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) (rejecting defamation by implication claim where "only with a 'strained' reading could an ordinary reader make the leap" from the article's statements to the alleged implication that the plaintiff "drinks to excess"). The question is whether the average reader, viewing the challenged publication as a whole, would understand it as conveying the alleged defamatory meaning. *See Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th

3

Cir. 2020) (applying "ordinary reader" standard and concluding that an ordinary reader would not understand the first challenged statement to have a defamatory meaning); *see also Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (applying Florida law and noting that in evaluating whether a statement is defamatory, the question is how it would be "understood by the average reader").

### iii. Plaintiff's purported defamatory implication hinges on a strained reading and multiple unreasonable assumptions.

In her Opposition, Plaintiff does not dispute that the alleged "juxtaposition" is between Mr. Schaffer's repost and the Mazzig thread; Defendant does not either. (DE 7 at 4–6). What she now adds is the claim that Mr. Schaffer "carefully chose" an older photo of her in a red dress "embracing" Director Patel, supposedly to "maximize" a honeypot implication. (DE 7 at 5). While untrue, even accepting Plaintiff's framing, the defamatory meaning she asks the Court to adopt depends on a series of speculative leaps a reasonable reader would not make.

To get there, the reader would have to: (1) start from Mazzig's discussion of historic Mossad "honeypot" operations; (2) assume that any woman pictured with a powerful man in reply to that thread must herself be a honeypot agent; (3) further assume that Defendant deliberately selected an older photograph posted by Plaintiff in a red cocktail dress to "signal" seduction rather than simply to depict her relationship with Director Patel; (4) layer on the pre-existing "Mossad/honeypot" conspiracy theories from the "conspiratorial corners of the internet" Plaintiff describes; and (5) then treat Defendant's wordless repost of a concededly true photograph as a literal factual accusation that Plaintiff is presently committing espionage and treason by infiltrating the FBI through a romantic relationship. That is precisely the sort of "strained" reading and series of "leaps" courts reject when evaluating defamation by implication claims. *See Biro*, 883 F. Supp. 2d at 470 (dismissing implication claim where only a "strained" reading allowed an ordinary reader to "make the leap" from true statements to the alleged defamatory implication).

Plaintiff effectively asks the Court to treat the most extreme, conspiratorial reading of Mr. Schaffer's post as the benchmark for the "reasonable reader." (DE 7 at 10). She cites the Restatement's reference to a "substantial and respectable minority," but that principle assumes a defamatory meaning that reasonably flows from the words used; it does not transform every far-fetched reaction into the yardstick for liability. *See Jews for Jesus*, 997 So. 2d at 1114. Here, the only audience Plaintiff identifies as embracing the literal "Mossad operative" theory are the same

4

"conspiratorial corners of the internet" she describes in her Complaint. That is not the "substantial and respectable minority" contemplated by the Restatement. Therefore, viewed as a whole, a reasonable reader encountering a silent repost of a concededly true photograph in the midst of a debate about foreign influence would understand it as commentary on the optics and security risks of Director Patel's highly public relationship, not as a factual assertion that Plaintiff is presently committing espionage and treason.

### iv. Plaintiff's own allegations undermine any reasonable reading of Defendant's post as an accusation of espionage and treason.

The Complaint and Opposition contain multiple allegations that cut directly against Plaintiff's proposition that ordinary viewers would understand Mr. Schaffer's post as a literal allegation of espionage and treason.

First, Plaintiff expressly acknowledges that the supposed implication (that she is a Mossad agent infiltrating the FBI) is "inherently ludicrous." Compl. ¶ 27. She likewise admits that she has publicly described similar accusations as "insanely ridiculous" conspiracy theories and has told her own followers that such claims are "funny" and "truly hilarious." (DE 5 at 3–4) (summarizing her public posts and interviews).

Florida and Eleventh Circuit courts routinely hold that where the challenged publication is obviously exaggerated, satirical, or opinion, the law presumes that reasonable readers will not treat it as a literal assertion of fact. *See, e.g., Greenbelt Coop. Publishing Ass'n v. Bresler*, 398 U.S. 6, 13-14, 26 L. Ed. 2d 6, 90 S. Ct. 1537 (1970) (calling a developer's negotiating position "blackmail" was non-actionable rhetorical hyperbole); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284, 41 L. Ed. 2d 745, 94 S. Ct. 2770-86 (1974) (use of the word "traitor" in union newsletter was protected rhetorical hyperbole); *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (television host's remark about plaintiff being an "accomplice to murder" was non-actionable opinion and hyperbole protected by the First Amendment as an "imaginative and figurative expression" that could not have been taken by a reasonable viewer as a literal assertion of facts.); *Rosenthal v. Council on Am.–Islamic Relations–Fla., Inc.*, 2017 Fla. Cir. LEXIS 18229, at *21–22 (Fla. 17th Cir. Ct. Aug. 14, 2017) (anti-SLAPP order dismissing defamation claim based on accusations that plaintiff was a "radical anti-Muslim activist" and supporter of terrorists, characterizing those statements as protected political commentary).

By pleading that the implication is "inherently ludicrous," Plaintiff herself concedes, albeit inadvertently, that this is the kind of hyperbolic, conspiratorial rhetoric that reasonable readers would recognize as exaggeration, particularly in the charged context of online debate about national security, foreign influence, and Israel.

Plaintiff leans on a single sentence from *St. Amant v. Thompson*, 390 U.S. 727 (1968), arguing that because she views the alleged accusation as "inherently ludicrous," only a "reckless" person would repeat it and actual malice follows. (DE 7 at 16). That is not what *St. Amant* holds. There, a political candidate went on television and read, as fact, a sworn statement accusing a deputy sheriff of taking bribes from a union leader. The Louisiana courts found actual malice based on his lack of personal knowledge, failure to investigate, and reliance on a single source. The Supreme Court reversed, holding that the *New York Times* standard is satisfied only where there is "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication," and giving "inherently improbable" allegations as just one example of when a jury might disbelieve a professed good-faith belief, not a shortcut to proving malice. *Id.* at 731–33. The *St. Amant* court thus rejected the very inference Plaintiff urges here. She pleads no facts suggesting that Mr. Schaffer fabricated anything, relied on an anonymous or suspect source, or believed he was making a literal factual accusation at all, much less that he thought it was probably false and posted it anyway. Her own view that the supposed implication is "inherently ludicrous" says nothing about his state of mind and cannot, by itself, establish actual malice.

      v.    ***Coton* does not save Plaintiff's claim.**

Plaintiff relies heavily on *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299 (M.D. Fla. 2010), arguing that Mr. Schaffer's post is akin to placing her photograph on pornographic movie packaging. (DE 7 at 4–6). This comparison fails.

In *Coton*, the defendant used the plaintiff's image, without consent, on the packaging of a pornographic DVD. The plaintiff was not an actress in the film. The court held that placing her image on the packaging for a pornographic movie "improperly suggests the plaintiff's participation in, or her willing association with, the pornographic industry" and therefore constitutes defamation by implication. 740 F. Supp. 2d at 1314.

Several key distinctions make *Coton* inapposite. First, the setting in *Coton* was commercial product packaging for pornography, where the natural reason to display a person's image is to

6

imply that she appears in or endorses the film. Here, the context is political commentary on national security and foreign policy, which are core matters of public concern protected by the First Amendment protection.

Second, in *Coton*, the defendant created and controlled the entire package and message. Here, the Mazzig thread already existed and contained its own discussion. Mr. Schaffer did not write that thread, did not repeat its language, and added no caption or words of his own. He simply engaged with that existing thread by reposting a truthful photograph of Plaintiff and Director Patel (one she had already shared on her own social media accounts).

Third, the pornographic DVD cover in *Coton* carried essentially one plausible implication: that the woman pictured participated in the film. Mr. Schaffer's post, by contrast, carries multiple plausible implications, including the non-defamatory commentary about Director Patel's judgment and the security risks of an unmarried FBI Director's romantic relationship, or more general criticism of perceived foreign influence on U.S. institutions.

Fourth, the plaintiff in *Coton* did not plead that the implied association with pornography was "inherently ludicrous." Here, Plaintiff does exactly that with respect to the alleged implication that she is a Mossad agent committing treason. Compl. ¶ 27.

**B. Plaintiff is At Least a Limited-Purpose Public Figure and Still Has Not Pled Actual Malice.**

The pleadings before the Court show that Plaintiff is at least a limited-purpose public figure under Eleventh Circuit precedent. Plaintiff alleges that she is a "patriotic conservative" country music artist and published writer, that she has long engaged in public commentary regarding her affiliation with Israel, and that, since 2023, she has been in a widely known romantic relationship with the Director of the FBI. Compl. ¶¶ 2,11. She admits that this relationship has been the subject of significant public scrutiny and online commentary and that, long before Mr. Schaffer said anything, others had already raised and debated the "Mossad/honeypot" narrative. *Id.* ¶ 5. She has also chosen to address that narrative through her own public posts and nationally available interviews (including on The Megyn Kelly Show and other podcasts), where she discusses and jokes about the rumors and frames them as part of life as a "public figure." (DE 5 at 3–4).

These are precisely the kinds of facts the Eleventh Circuit has found sufficient to render a plaintiff a limited-purpose public figure because they show voluntary participation in a public controversy, access to channels of effective communication, and a central role in the events giving

rise to the alleged defamation. *See Jacoby v. CNN, Inc.*, 2021 U.S. App. LEXIS 36594, at *9–13 (11th Cir. Dec. 10, 2021); *Berisha v. Lawson*, 973 F.3d 1304, 1310–11 (11th Cir. 2020); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Because Plaintiff is at least a limited-purpose public figure, she must plead facts showing that Mr. Schaffer published the challenged implication with "actual malice," i.e., with knowledge of falsity or serious doubts as to truth. *Michel*, 816 F.3d at 702. Conclusory assertions of bias or ill will are not enough. *Id.* at 703–04.

As explained in the Motion, Plaintiff's actual malice allegations fall far short. She alleges that Mr. Schaffer has criticized Israel, used charged rhetoric, and has a "business model" focused on engagement. (DE 7 at 1). She also alleges that he was aware of her public denials of being a Mossad agent. (DE 7 at 17). But none of this, without more, amounts to actual malice. A desire for clicks or controversy, political or ideological hostility, and failure to investigate or acknowledge a plaintiff's denials is insufficient to show actual malice. *See Reed v. Chamblee*, 121 F.4th 1345, 1350–52, 2025 WL 1874638, at *10–12 (11th Cir. 2025); *see also Michel*, 816 F.3d at 702–03. Under *Iqbal* and *Twombly*, a plaintiff must do more than recite that Defendant acted "knowingly," "intentionally," "willingly," "wantonly," "maliciously," and with "malice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. She must plead concrete facts supporting a plausible inference that Mr. Schaffer subjectively believed he was circulating a false factual allegation of espionage and treason. She has not. At most, Plaintiff has only alleged facts that Mr. Schaffer was not fond of Director Patel, which, as already explained, is simply not enough as a matter of law.

Similarly, Plaintiff's reliance on *Hunt v. Liberty Lobby* is misplaced. 720 F.2d 631 (11th Cir. 1983). In that case, the court found that "[w]hen a story is not 'hot news,' 'actual malice may be inferred when the investigation . . . was grossly inadequate under the circumstances.'" *Id.* at 645 (quoting *Vandenburg v. Newsweek, Inc.*, 441 F.2d 378, 380 (5th Cir. 1971) (ellipses in original)). Here, Plaintiff's relationship with Director Patel is "hot news," which distinguishes this case from *Hunt*.

Accordingly, Plaintiff has failed to show actual malice, which is sufficient grounds to grant dismissal.

C. **The First Amendment and Florida's Anti-SLAPP Statute Warrant Early Dismissal.**

Mr. Schaffer's publication is protected by the First Amendment. The challenged statement is, at most, political rhetoric about a high-ranking federal official's romantic relationship and

perceived security risks during a time of ongoing, global debate about U.S.–Israel relations and foreign influence. This kind of rhetoric, even if hyperbolic or offensive in nature, is core political speech. The Supreme Court has repeatedly emphasized that courts must be especially vigilant against efforts to use defamation law to chill this kind of debate. *See New York Times Co. v. Sullivan*, 376 U. S. 254, 270, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

That principle is reflected both in the actual malice standard and in Florida's anti-SLAPP statute, which directs that lawsuits "without merit" and "primarily" targeting protected speech "must be resolved at the earliest possible stage." Fla. Stat. § 768.295(3)–(4). Federal courts in this District, including this Court, have applied § 768.295 to defamation actions and awarded fees once the underlying claims fail on the merits. *See Vesselov v. Harrison*, No. 23-80791, 2024 WL 536061, at *15–16 (S.D. Fla. Jan. 4, 2024) (Middlebrooks, J.) (granting anti-SLAPP fees after dismissing defamation claims arising from reporting on public proceedings as "without merit" and targeting protected speech); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128–30 (S.D. Fla. 2021) (Ruiz, J.).

Once the Court concludes that Plaintiff has failed to plead a plausible defamatory meaning or actual malice, which is the case here, this case is "without merit" as a matter of law. Under *Vesselov* and similar decisions, that finding triggers § 768.295's mandatory fee-shifting provision. Therefore, because Plaintiff's claim fails on the merits, Florida's Anti-SLAPP statute applies under existing case law.

### D. Plaintiff's Evidentiary Objections Do Not Change The Result.

Plaintiff devotes part of her Opposition to arguing that the Court may not consider the articles and online materials cited in the Motion. Those objections are misplaced and, in any event, unnecessary to resolve this Motion. First, the Court may take judicial notice of the existence of publicly available news articles and online postings, not for the truth of their contents, but to show that Plaintiff's relationship with Director Patel and the "Mossad/honeypot" narrative have been widely discussed and are matters of public interest. Fed. R. Evid. 201(b)(2).

Second, the "conspiratorial corners of the internet" commentary, social media posts, and interviews that Plaintiff herself describes are properly incorporated by reference because they are central to her claim and their authenticity is not disputed. *See Vesselov*, 2024 WL 536061, at *10–11 (Middlebrooks, J.) (concluding that exhibits attached to defendant's motion to dismiss fell within incorporation by reference exception because they were central to plaintiff's claims); *see*

*also Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (explaining that a document is incorporated by reference into a complaint if it is "central to the plaintiff's claims" and "undisputed, meaning that its authenticity is not challenged"). Plaintiff alleges that such online content created and spread the very narrative she challenges here. She cannot simultaneously rely on that narrative and object to the Court's consideration of the sources she herself references.

Third, and most importantly, even if the Court were to disregard all exhibits and external materials and confine itself strictly to the four corners of the Complaint, dismissal would still be appropriate. The Complaint itself establishes that the only content attributable to Mr. Schaffer is a caption-less repost of a concededly truthful photograph, that Plaintiff herself views the alleged implication as "inherently ludicrous", and that she has not pled facts supporting actual malice. On its face, the Complaint fails.

### III.  CONCLUSION

Plaintiff's Opposition confirms that her claim rests on a speculative interpretation of a single reposted photograph in an online political debate (one she herself calls "inherently ludicrous"). Applicable law does not permit defamation by implication liability on such basis, particularly where the speech concerns core issues of national security and foreign policy and is protected by the First Amendment. Because Plaintiff has not plausibly pled a defamatory meaning, falsity, or actual malice, the Court should grant the Motion, dismiss the Complaint with prejudice, and award Defendant his reasonable attorneys' fees and costs under Fla. Stat. § 768.295 and any other applicable authority.

Respectfully submitted,

**LLOPIZ WIZEL, LLP**
1451 W Cypress Creek Rd 300
Fort Lauderdale FL 33309
Telephone: (754) 312-7389

*/s/ Onier Llopiz*
Onier Llopiz
Florida Bar No. 579475
E-mail: ol@l-wfirm.com
E-mail: admin@l-wfirm.com

Joan Carlos Wizel
Florida Bar No. 37903

                 Email: jcw@l-wfirm.com
                 E-mail: cp@l-wfirm.com

                 Jaclyn M. Sanchez
                 Florida Bar No. 1049836
                 Email: jcw@l-wfirm.com
                 E-mail: cp@l-wfirm.com

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF on this 27th day of January, 2026 to the following:

**SERVICE LIST**
Jason C. Greaves, Esq. (FBN 1059179)
Jared J. Roberts, Esq. (FBN 1036550)
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com
Counsel for Plaintiff Alexis Wilkins

                 */s/ Onier Llopiz*
                 Onier Llopiz